**ASKEY v. POWER et al.**
No. 12777.

Court of Civil Appeals of Texas. **Fort**
Worth.

Feb. 18, 1933.

Rehearing Denied March 25, 1933.

See, also, 21 S.W.(2d) 326; 36 S.W.(2d) 446.

John L. Poulter, of Fort Worth, for appellant.

C. T. Gettys, of Decatur, for appellees.

LATTIMORE, Justice.

D. L. Power died survived by a wife and several minor children and seized of a community estate of about 1,300 acres of land, all covered by one or more mortgages. Appellee T. J. Power was appointed administrator. In December, 1926, the probate court of Wise county set aside a homestead of 200 acres which we designate "No. 1" out of said estate.

A portion of this land was due to be used for a lake being built by a water improvement district. Mr. Slay, a member of the board of directors of said district, made a contract with the widow in November, 1927, the exact day not proven, that she take another homestead which we name "No. 2," selected for her by the judge of the probate court of Wise county, and, in the event she did so, and he could secure the transfer to him of the balance of the land in administration, including "No. 1," such transferee would deed back to her 100 acres adjoining such "No. 2."

On November 29, 1927, said probate judge entered an order reciting the same to be done "of his own motion," and finding "No. 1" "practically valueless as a homestead," and reciting that the order designating "No. 1" is set aside and that "No. 2" is set apart as a homestead for the widow and minor children of the deceased, and thereafter approved an application by the administrator to deed to Mr. Clyde Slay all of the land of said estate, except "No. 2," in consideration that Slay assume the mortgage liens, two in number, and the delinquent taxes against same, and in January the administrator executed such deed. Ten days later Clyde Slay deeded to the widow the 100 acres of land, reciting $1 cash and a note for $200 payable to the widow's attorney, which was admittedly for the sole purpose of paying her attorney fees in the administration of the estate.

Appellant appeared in the probate court and protested the designation of "No. 2" and the sale to Slay. No one has appealed from either order. The court in 1926 made an allowance of $1,000 for the widow's maintenance which has not been paid.

Appellant, one of several general creditors, and having a judgment against the deceased husband, brings this suit to subject the 100 acres to the payment of his claim. On trial the court instructed a verdict against him.

Fortunately, we are not called upon to decide the validity of the designation of "No. 2" as a homestead, for no one seeks to set aside the action of Slay in alienating the 100 acres; on the contrary, all parties to this suit uphold it, the one difference between them being that appellant claims the 100 acres is the purchase price of the balance of the estate and is therefore subject to his debt. Appellee contends that it is the exchange price for the trade of less valuable No. 2 for the more valuable No. 1.

This 100 acres involved descended to the heirs subject to the debts of the estate. In an effort to dispose of some of those debts, the administrator sold a part of the estate with the approval of the probate court, and such judgment regularly pronounced and unappealed from is final and cannot be collaterally attacked. Giddings v. Steele, 28 Tex. 733, 91 Am. Dec. 336.

Appellant does not in so many words in his pleadings allege a fraud, but in his brief he contends that Slay and the administrator and the widow perpetrated a fraud upon the creditors, and that a constructive trust in behalf of the creditors upon the 100 acres arises. More properly on the pleadings, his trust, if claimed, is a resultant trust. However, it seems plain that the fraud, if any, was perpetrated upon all the creditors, and that the 100 acres would be subject in equal right to all the creditors, of whom there are others than appellant. No demand has been made on the administrator to sue for the land, nor on the probate judge to require the administrator to do so. Neither has there been an application for the appointment of an administrator de bonis non, though each of these remedies is provided by our law. Articles 3428, 3429, 3452, Rev. Civ. Statutes.

Appellant may contend that the facts showing that the county judge knew, at the time he ordered the sale, that Slay had promised the widow this 100 acres, make any such procedure futile, but the answer is that appellant may appeal from the adverse holding of the probate judge. Our holding is not to be confused with those cases ruled by Douglas v. First State Bank of El Dorado, 120 Tex. 631, 40 S.W.(2d) 801, where a decedent had made a deed in fraud of his creditors. Such property is no part of the estate. Wilson v. Demander, 71 Tex. 603, 9 S. W. 678, although the creditors have rights therein. To uphold this action would be to give license to every person interested in an estate who felt aggrieved at the discretion exercised by any sale therein to go into some other court and file suit.

It appears from the evidence that what actually occurred was that the widow agreed with Slay to trade her designated homestead "No. 1" for "No. 2," plus the 100 acres, in the event the sale to him by the administrator was completed. The question of whether "No. 1" should be abandoned as a homestead rested entirely in the control of the widow, though the children's title therein vested on the death of their father, subject to the payment of debts. The estate is insolvent. If the widow traded the 200 acres which thus vested free of debts for 300 acres elsewhere, however vulnerable the title acquired thereby may have been upon attack by a proper party, no creditor can complain. That this 300 acres was formerly a part of the estate is immaterial. If the act diverting it from the estate was an abuse of the power of the probate court, then appellant should have appealed. This he did not do. He here claims a fraud perpetrated by the administrator, a thing which he could not or would not support by a direct attack where that issue could be thoroughly investigated.

It is interesting to note that, should the 100 acres be returned to the administrator, he must sell it to pay the allowance of $1,000 for the support of the family. The evidence shows it to be worth between $400 and $800. The only effect of such would be to take from the family the expense of administration thereon. While we are not able, in the face of the statutory declaration that only personal property may be delivered in lieu of the allowance, to say that this 100 acres should be left with the widow because of the unpaid allowance, yet it is interesting to note that our Supreme Court upheld the refusal to reopen an administration to pay a claim of $66, admonishing the parties that, because of the great difference in the cost of the two proceedings, the creditor should sue the heirs. Turner v. Wallace, 99 Tex. 543, 92 S. W. 31.

We have examined all assignments, and the judgment is affirmed.